THE GROVER & BAKER SEWING MACHINE COMPANY

*v.*

ARISTARCHUS BULKLEY.

1. CONTRACT — *of employment, fixing time of, and price — party holding over term adopts the original contract as to price to be paid.* Where a party enters the employment of another, under a special contract, fixing the time, and the price to be paid for his services, and continues in such employment after his term has ended, he will be considered as holding under the original contract.

2. SAME — *contract price must govern.* And in such case, the contract will control the price, and it is error for the court, in its instructions to the jury, to put the claim for such services, performed after the expiration of his term, upon the basis of a *quantum meruit.*

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Chief Justice, presiding.

The opinion states the case.

Mr. F. S. HOWE, for the appellants.

Mr. J. S. PAGE, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court :

This was an action of assumpsit, brought to the Superior Court of Chicago, by the Grover & Baker Sewing Machine Company, against Aristarchus Bulkley, and verdict and judgment for the defendant, to reverse which the plaintiffs appeal to this court.

It appears, from the record, that these parties had, on the third day of August, 1864, entered into a written contract, by the terms of which, defendant should serve the plaintiffs one year, as their agent, either traveling or stationary, to sell and dispose of their sewing machines, for the sum of one thousand dollars, payable monthly, the term to commence August 8, 1864.

It appears the defendant was stationed at St. Louis, and to him the president of the company, on the 7th of July, 1865, within one month of the expiration of the year, by letter of that date, informed defendant that, as then advised, they wished to arrange with him to remain in charge another year, and hoped the business might be such as to warrant an increase of salary to him, while it should be more profitable to the company.

To this letter the defendant made no reply, but continued in the agency, when, on the fourth of April, 1866, he wrote the company, complaining of his meagre pay, and desiring an understanding about his salary.

To this letter the company replied, on the 9th of the same month, that they did not think they could allow him, since August 8, 1865, the end of his year, over one hundred dollars per month, believing the business would not warrant more; that he could draw this amount, and, when alone with him, the president of the company would consider whether there was any just ground for further allowance; that they

have been much disappointed at the large falling off of business.

In reply to this, the defendant, on the 12th of April, expresses his mortification at the amount proposed to be paid since August 8; that for his labor, care and responsibility, it seemed a very small allowance, compared with their allowance of one hundred and twenty dollars to a book-keeper, with very little labor and no responsibility, concluding by advising the company that he could not remain, and should give up his situation on the 8th of May.

The company replied to this, on the 16th of April, that they would relieve him at the date mentioned, May 8, and say they did not mean to decide they would not allow him more than one hundred dollars per month, since August, but only, that the extra allowance, if any, should be the subject of consideration after the president visited St. Louis, and had an opportunity to examine the facts upon which a claim to further allowance was based, and the fact that a falling off in the business, since he took charge, though discouraging, would not prevent the company from doing all they should find they were called upon to do with him, in justice.

In reply to this, the defendant, under date of April 16, writes that he wished it could be so that the president could be at St. Louis before the third of May, as defendant would like to be there when he comes; thinks he will find a great increase of business since he came to St. Louis, and the falling off spoken of was attributable to the management of the books and reports, for which he was not responsible, as he had no control over them.

The defendant remained in charge until the 10th of May, and left for Chicago, from which place, on the 14th of May, he wrote to the company, admitting he had used more money than they spoke of allowing him, but that he only drew out just what he was compelled to use to pay his expenses. He then says, that he feels he ought to have, for four months of

the balance of the first year, one hundred and twenty-five dollars per month, and for nine months and a quarter of the second year, one hundred and fifty dollars per month. He then states an account made up on this basis, by which a balance is shown against the plaintiffs, of two hundred and twenty-five dollars. He says the wages he asks for are less than the amount paid for book-keepers, for some part of the time, and less, in proportion, than it should be all the time; that he only wanted what was right, and stood ready to settle the matter strictly on that principle, and if there was any reason why he should not receive what he claims, he hopes he can be made to see it.

On this showing and claim of the defendant, the company brought their action of assumpsit, on the common counts, to which the defendant pleaded the general issue and set-off.

The jury found for the defendant fifty-eight dollars and thirty-two cents, of which a *remittitur* of twenty-five dollars was entered, and a judgment rendered for thirty-three dollars and thirty-two cents, a motion for a new trial, on behalf of plaintiffs, having been denied.

The first point made by appellants, that a party entering, under a contract for a specified time, into the employment of another, and continuing after the expiration of the term, will be considered as holding under the original contract, must be conceded. It is the same, in principle, as a holding over by a tenant, who is in under a specified contract; if he holds over, he will be considered as holding under the first contract, if no change is shown. *McKinney* v. *Peck*, 28 Ill. 174, and cases there cited.

By the written contract, the defendant was entitled to one thousand dollars per annum, payable monthly, in sums of eighty-three dollars thirty-three cents, and no more. His claim to be paid for four months of that time at the rate of one hundred dollars per month, has no ground to stand upon, but as he continued in the employment of the plaintiffs nine

months and three days after the expiration of the year, he would be entitled to claim only at the rate of one thousand dollars per annum, were it not for the letter of the company, of April 9, in which the defendant is promised one hundred dollars per month, from August 8, 1865, being twelve hundred dollars per annum. The defendant did not accept this proposition, but abandoned the service. For this nine months and three days the defendant is entitled to claim allowance on the basis of one hundred dollars per month. The market value of his services has nothing to do with the claim, as we understand it. The defendant was entitled only to the *pro rata* allowance of one thousand dollars per annum for these nine months and three days, by continuing in the service of the plaintiffs, had no advance been made in his allowance.

By his increased pay, by the letter of April 9, 1866, the company was indebted to the defendant, nine hundred and ten dollars, instead of thirteen hundred and ninety dollars, as he has charged, making a difference in favor of the plaintiffs of four hundred and eighty dollars, for which they would have had a verdict.

The letter of the plaintiffs, to the defendant, of July 7, 1865, to which he did not reply, but continued in their employment, evidently contemplates an increase of salary only in the event of an increase of business, or profits, which as shown by the witness Simcoe, did not occur. Except in this event, it is quite apparent, from the terms of this letter, that the company expected the defendant would continue, at the salary originally stipulated, or as increased by the letter of April 9. This certainly was the understanding and intent of the plaintiffs, and when the defendant received the letter, and continued in the employment, after his term expired, this intent binds him. The defendant knowing, by this letter, that such was the intent of the plaintiffs, he continued his services, and he must be held to it. He should have protested at once,

25—48TH ILL.

194    GROVER & BAKER S. M. CO. *v*. BULKLEY. [Sept. T.,

Opinion of the Court.

on the receipt of this letter, and given notice that he would quit on the eighth of August, according to the terms of the original contract.

The cases referred to by appellant's counsel, *Jordan* v. *Dyer*, 34 Verm. 104, and *Despard* v. *Wallbridge*, 15 N. Y. 374, and many more might be cited, illlustrate this point.

It was evidently, we think, the intention of both parties, that the question of additional compensation was entrusted to the company. They seem to have acted with perfect fairness, if not generously, toward the defendant.

With the views here expressed, we are of opinion the Superior Court erred in saying, to the jury, that the only question before them was, how much, under all the circumstances shown in the evidence, ought to be allowed by the plaintiffs for those nine months and three days; and in saying it was a question entirely for the jury to say how much, under all the circumstances in evidence, the plaintiffs ought reasonably to pay, and the defendant is reasonably entitled to claim for those months and days. The court should not have put the claim upon the basis of a *quantum meruit*, but should have put a construction upon the contract, and told the jury that the defendant could claim only under the contract. *Brigham* v. *Hawley*, 17 Ill. 38.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*