*In re* VAN BUSKIRK'S ESTATE.

CLAIM OF DECKER.

CONTRACTS—FARM LABORER—EQUALLY DIVIDED COURT.
 Judgment for plaintiff in proceeding to recover for wages as farm laborer is affirmed by an equally divided court.

Appeal from Ingham; Hayden (Charles H.), J. Submitted April 15, 1937. (Docket No. 91, Calendar No. 39,441.) Decided June 29, 1937. Rehearing denied September 1, 1937.

In the matter of the estate of Frances Van Buskirk, deceased. Charles Decker presented his claim in probate court for wages due. Claim disallowed. Plaintiff appealed to circuit court. Verdict and

judgment for plaintiff. Defendant appeals. Affirmed by equally divided court.

*Rosslyn L. Sowers,* for plaintiff.

*George H. McArthur* and *Cummins & Cummins,* for defendant.

Chandler, J. Prior to the year 1898 plaintiff had been employed as a farm laborer by Abram Van Buskirk, father of Frances Van Buskirk, decedent, under an oral contract of hire providing for the sum of $20 per month as compensation for services rendered. In 1898, following the death of Abram Van Buskirk, plaintiff orally agreed with decedent to continue to work the farm under the same terms and conditions as he had been previously employed by her father. Plaintiff continued to live on the farm and perform work as a farm laborer until the death of Frances Van Buskirk.

The Van Buskirk farm consisted of 240 acres of land, 160 acres of the same being tillable.

During all the years plaintiff lived and worked on the farm, subsequent to the death of decedent's father, there is no direct evidence that he ever received any pay for his services, but the estate in plaintiff's claim is credited with payment for services to January 1, 1906, with the exception of the sum of $160. On several occasions decedent acknowledged her indebtedness to plaintiff. This action was instituted by plaintiff to recover for his services, his claim being in the amount of $7,540. A motion for judgment notwithstanding the verdict of the jury in favor of plaintiff was made by defendant and denied. Defendant appeals.

Counsel for defendant state that there is only one material question at issue on this appeal. Was

there any evidence to go to the jury that a continuing contract existed from the year 1898 until the death of Frances Van Buskirk in October, 1935?

It is unquestioned that there was an express agreement between the parties following the death of Abram Van Buskirk in 1898 that plaintiff should continue to work on the farm under the same terms and conditions as had theretofore existed. Almeron Griffin, who was also employed on the farm by Abram Van Buskirk, testified relative to a conversation occurring shortly after the death of Abram between himself, plaintiff, and decedent.

"This talk was about two or three days after the death of Abram Van Buskirk. I and her and Charlie stood there and I said, 'I suppose our time is out.' She said, 'No, I want you to go straight along and work just the same as though father was here.' She said, 'Go ahead and work and I will see you fellows get your money.' We were to receive $20 per month —she mentioned that. I continued to work there until, I think, the next spring, and then I went somewhere else to work."

The proof shows that thereafter plaintiff continued to work the farm in the same manner as he had worked before the death of Abram Van Buskirk. The same witness further testified:

"I have continued my acquaintance with Charles Decker throughout the years. I don't know as I could tell the last work on the farm. He has been on the farm right along, ever since I have known him. His work consisted in everything that is on the farm; overseeing the farm, keeping it going, took charge of the farm."

Without detailing the entire testimony it will suffice to state that there is abundant proof to establish that following the death of Abram Van Buskirk and

up until the death of Frances Van Buskirk, plaintiff performed his duties in a workmanlike manner, that most of the land was cultivated and good crops produced thereon, that some live stock was raised and sold and that the buildings and fences were in fair repair. Most of this was accomplished through efforts of plaintiff, though there were others who at times helped on the farm.

Although it would be unreasonable to suppose or expect that plaintiff, who at the time of the death of Frances Van Buskirk was past 80 years of age, performed as much work as in his earlier years, it is clear that until the death of decedent, he was faithfully performing his duties, and during the last few years was furnishing a team and some tools. A neighbor who resided directly across the road from the Van Buskirk farm offered the following testimony:

"I reside just across the road from the Van Buskirk place, and have resided there three years this fall. I knew Frances Van Buskirk in her lifetime. After I moved on the farm across the road, we visited and neighbored back and forth. During the time I lived there previous to the death of Frances Van Buskirk, Mr. Decker did the general farm work on the farm.    *    *    *

"Relative to my observations, there was no one else there to have charge of the farm and look after the farm work."

Another neighboring farmer testified:

"I have resided on my farm about 34 years. Mr. Decker has been on the Van Buskirk farm during all of that time. I saw him working on the farm and cropping it in the usual way. I have seen him work in corn, beans, wheat, oats and all of the usual farm crops.    *    *    *

"The crops that Mr. Decker looked after were well taken care of. I think he had corn on the farm two years ago; it was a good piece of corn two years ago; he had a small piece of wheat which he took care of in a good workmanlike manner."

And still another witness stated:

"During the nine years that I have known him, I have visited the Van Buskirk farm about once a year. During all of that acquaintance Mr. Decker was at the Van Buskirk farm all the time. During the time I have visited there, he did general farm work so far as he could do. I calculate he is a pretty good man yet today."

From the foregoing testimony, none of which is contradicted, it is clear that plaintiff faithfully served his employer to the best of his ability for a period in excess of 35 years. In addition thereto, it is apparent that on several occasions decedent acknowledged her indebtedness to plaintiff, all of which was likewise undisputed. Excerpts from the testimony of various witnesses relative to conversations with decedent in which she recognized her obligation are quoted as follows:

John Eldred:

"My last conversation with her was when I was in the meat market about two and half years ago; it would be two years ago this fall. * * * At that particular time I asked Miss Van Buskirk how Charles was working the farm, and she remarked 'well,' she said, 'she didn't know, Charles hadn't had any wages in so long, that he didn't know what money looked like.' 'But,' she said, 'he will get his pay some day.'"

Chester Bidwell:

"About the time the banks closed up, about three years ago, Frances was talking about hard times—

how it struck us. She said it struck her hard enough, and she wished things would change so she could get money to square up—she owed Charles Decker a large amount and she would like to square it away with him, but didn't know that she ever could."

Alfred Hemminger:

"About eight years ago I was thinking of buying a farm, and I went there to borrow $3,000 of her. She said she didn't have it; if she had it she would pay up Charlie, if she had that much, she would pay Charlie what she owed him.   *   *   *

"I have known Charles Decker around 30 years. During that time he has been working on the Van Buskirk farm. Up to the last three or four years, I considered him an awful worker—a slave in my way of speaking. I was there three years ago at dinner, and Mr. Decker was sobbing about the little money he had; how he had let it out and he was talking about it; he was afraid he wasn't going to get it —it was very little. He went out of doors after dinner, and I said to Frances, it would be too bad if Charlie would be let out, if something happened to her, and she said, 'If something happens to me, Charlie will be taken care of.' I said, 'Charlie has worked a long time here for a pair of horses and a red handkerchief.' I thought he ought to be taken care of. She looked up and smiled and said, 'He will.'"

We are of the opinion that not only does the foregoing testimony fully substantiate plaintiff's claim that the contract of hire was of a continuous nature from the year 1898 to the death of decedent, but that upon review of all the testimony plaintiff was entitled to a directed verdict.

Defendant urges that, because during the last few years less crops were raised than in former years, because no appreciable amount of live stock was kept on the farm, because some fields were

rented to neighboring farmers, because there was evidence that plaintiff owned the team with which he worked and had the aid of some farm machinery which also belonged to him, it is indicative that the original express contract at some time terminated due to a change of relations between the parties and that thereafter plaintiff's claim, if any, would be founded on an implied agreement.

Construing this testimony most favorably in favor of defendant, we do not think that it alone would be sufficient to justify the jury in reasonably drawing the inference that the original express contract had terminated. The presumption is quite to the contrary. Where a contract of hiring for an indefinite period with a stipulated rate of compensation is established, and the relation of employer and employee continues for a definite period and then ceases, it is a continuing contract and the presumption is that the wage is to be the same. True, this presumption is rebuttable but it must be either by evidence showing a change in the contractual relation, or by some material change in the relationship sufficient to warrant a reasonable inference that the original contract had been terminated by the parties. In this case the burden to show there had been such change in the contractual relations was upon defendant. In our opinion there is no testimony nor circumstance, rising to the dignity of evidence, that tends to rebut the presumption arising from the relationship existing between plaintiff and decedent. See *Leidigh* v. *Keever,* 5 Neb. Unoff. 207 (97 N. W. 801). In the cited case the jury was instructed in substance that if they should find that a contract for $1,000 per year in payment for services was made, the agreement would be presumed to continue from year to year during the time plaintiff should continue in the defendant's employ unless the contract was in

some way changed by agreement of the parties and the burden of proving such change or modification would be on the party claiming it. The court held this instruction not to be error, stating:

"The rule undoubtedly is that, if one person employ another at an agreed price for a time certain, and the employment is continued after the expiration of the time agreed upon, without any new agreement as to price, the presumption is that the parties understood that the original rate of compensation is also to be continued; and it can make no difference that there may be some change in the service required and performed, as that there be an increase or diminution of the labor, so long as it is clearly within the scope of the original employment. The reason is that, if the employee remains in the same employment after his term of service has expired without making demands for increased pay, the employer may well presume that no increased compensation is expected or will be required; and, having acted upon that presumption, and failed to protect himself by a new contract, the employee will be held to have assented to a performance of the service at the original price. The rights of the employee and the employer are mutual and reciprocal, and where the employer permits a continuance of the services after the term has expired without a new stipulation as to the price it will be presumed that he expected and intended to pay for the services the original compensation stipulated. *Wallace* v. *Floyd,* 29 Pa. 184 (72 Am. Dec. 620); *Ranck* v. *Albright,* 36 Pa. 367; *N. H. Iron Factory Co.* v. *Richardson,* 5 N. H. 294; *Grover & Baker Sewing Machine Co.* v. *Bulkley,* 48 Ill. 189. It appears from the evidence that the defendant had entered upon and performed a part of the third year's services before he was sent to the plaintiff's farm; that at that time the plaintiff said to him that he desired to put his boys into the ice business; that the defendant should go upon the

farm, and take charge of it, and help the boys in the ice business what he could; and that nothing was said as to the amount of compensation the defendant should thereafter receive. If it be true that when the original contract was entered into the agreement was that the defendant should receive a stipulated sum for his services, say $1,000 per year, then the nature of the service required to be performed by him on the farm was not so different from that which the parties had in contemplation when the original contract was made as to rebut the presumption that the compensation would remain the same. Therefore the court did not err in giving this instruction."

It must be remembered that plaintiff devoted over a third of a century in serving Frances Van Buskirk alone and for practically the entire period never received his pay. In the absence of evidence indicating her dissatisfaction with the method and manner in which plaintiff performed his work in later years it cannot be reasonably said that she intended a change in the contractual relation. Any inference to be drawn from her expressions are to the contrary. Neither can it be reasonably said that the relation changed because plaintiff in his operation of the farm used two horses and some machinery that he owned himself. There was no substantial change of any nature either as to the duties performed or the method of performance and no evidence produced which would reasonably justify the inference that such a change occurred.

Defendant asserts the defense of the statute of limitations (3 Comp. Laws 1929, § 13976), arguing that at least that portion of plaintiff's claim accruing more than six years prior to the death of decedent is barred. The contract was continuous in its nature with the time of payment remaining indefi-

nite. The statute did not commence to run on any portion of the claim until the death of Frances Van Buskirk. *Carter* v. *Carter*, 36 Mich. 207; *Wisniewski* v. *Wisniewski's Estate*, 254 Mich. 663; *Harmon* v. *Smitch*, 86 Ind. App. 527 (157 N. E. 284).

Counsel for appellants in their brief admit that at the outset there was a contract of employment between plaintiff and decedent. definite as to the character of services to be rendered, wage to be paid, and indefinite as to its duration, but make the following claim:

"It is our contention that the situation of the parties gradually changed many years previous to the death of Frances Van Buskirk, and at some time so definitely changed that it cannot reasonably be said that after that time the parties continued under the terms of employment as originally agreed upon. It would be difficult to imagine a more complete change of conditions. The original contract called for the work of plaintiff's bare hands. Whatever work he did during the later years was not the work of his bare hands, but was the work of himself and team and tools. He was doing an entirely different job, so why should it be presumed that he was doing it at the same rate of pay?"

It is true that the original contract called for the work of plaintiff's bare hands. The record shows that a portion of the time at least plaintiff worked barefooted as well as bare-handed and that for his 35 years of employment, terminating at the death of decedent, he was left with "a pair of horses and a red handkerchief" as expressed by one of the witnesses who stated that he, the witness, had made this statement to Miss Van Buskirk. The same witness further said to her, "I thought he ought to be taken care of. She looked up and smiled and said,

'He will.' " Another statement made by decedent shortly before her death to witness John Eldred long after plaintiff had acquired a team and machinery and was using the same on her farm, is very significant in justification of the inference that there had been no change in the contractual relations of these parties. She said, "Charles hadn't had any wages in so long that he didn't know what money looked like, but" she said, "He will get his pay some day." In 1933 she stated to witness Chester Bidwell that she owed Charles Decker a large amount and she would like to square it away with him. The record discloses that plaintiff with his team and machinery worked for some of the neighbors who paid for his work by working on the farm of decedent. In other words, they exchanged work. So far as appears from the record, crops raised on the farm after the acquisition of a team by plaintiff were sold by decedent and she received pay therefor. Attention is called to these matters because it occurs to us, in view of the continued and long relations existing between the parties, that no inference could be drawn therefrom that would justify a finding that the parties had ever made a contract other than the original one. There is nothing in the record from which even a guess could be made that plaintiff ceased to be an employee of decedent and became a tenant farmer.

Counsel further contend that during the later years plaintiff did very little work and that what he did was entirely different from what the original contract called for. The uncontradicted testimony is quite to the contrary. Counsel contend that with the passing of years the condition of the farm gradually changed until at the death of Frances it was in a ruinous condition in many respects. The fences

were gone. Many of the fields were untilled, many were rented out to crop renters, meadows were uncut, that the reason for renting out fields was that plaintiff was too old to work them. Again, the evidence is contradictory of this claim. The witnesses say that the house and large yard adjoining were kept in good condition, that the plaintiff cut the meadows on said farm, and decedent sold the hay and received the pay therefor, that other crops were raised and that plaintiff was always working. It was not incumbent upon plaintiff to provide fence in order to keep the farm well fenced, or to furnish supplies for the repair of the barn. It was decedent's business, and if she did not wish to spend money for the repair of barns and fences she was under no obligation to do so.

Defendant asserts that the trial court erred in his charge to the jury. Under our view no question for the jury was presented. The court should have directed a verdict for the full amount of plaintiff's claim. Defendant, therefore, has no cause to complain and it becomes unnecessary to discuss this question.

Judgment affirmed, with costs.

BUSHNELL, SHARPE, and POTTER, JJ., concurred with CHANDLER, J.

WIEST, J. I find error commanding reversal.

Plaintiff presented a claim for 30 years' services as a farm hand at an agreed price of $20 per month and, to avoid the statute of limitations (3 Comp. Laws 1929, § 13976), claimed that the contract was a continuing one without modification or change and, therefore, the action for recovery was not outlawed by lapse of time. Plaintiff claimed $20 per month from January 1, 1905, to October 7, 1935, a period

of 369 months, or $7,380. The jury awarded $5,275, or $2,105 less than the amount claimed, or a deduction of between eight and nine years.

It is quite evident that the jury found the contract urged by plaintiff did not continue without change, but that a change came when the farm had been mostly let out to share-croppers and plaintiff had obtained a team and tools and worked some fields.

Defendant requested the following instruction:

"I charge you that there can be no recovery in this case of any amount whatever unless you find, as a matter of fact, from the preponderance of evidence in the case, that the contract of employment existing in the year 1898, by which claimant was to have compensation for acting as a farm-hand on said farm at the rate of $20 per month actually continued at all times to exist in all its terms without modification. You cannot award anything to the claimant on any other basis than the contract of employment as a farm-hand continued at the same wage during that entire period."

Plaintiff sought recovery under a continuing contract and both plaintiff and defendant made that the sole issue in the case.

The circuit judge, however, *sua sponte,* instructed the jury in part as follows:

"I charge you that you will first determine, was there an express contract between the deceased, Frances Van Buskirk and claimant, Charles Decker, and, if you find, having all the testimony in mind, that there was such an express contract, you will then determine what claimant is entitled to, if anything, by reason of that contract. Now, I think under the proofs in this case, I am justified in saying to you as a matter of law that if such contract were made it contemplated the services to be performed, the work

to be done, having in mind the condition of the farm,
the animals and fowl kept thereon, the crops raised
and the general repair of the premises at the time it
was so made. That if you find there was such a con-
tract, then it is your duty to find how long the same
continued, the same conditions existed. In other
words, if you find such express contract based upon
the conditions that then existed, it then becomes your
duty to go on and find how long those same condi-
tions existed, requiring the same services contem-
plated at the time the contract was entered into.
Under the proofs in this case, there is no dispute but
that those conditions changed and it is not reasona-
ble to assume that if deceased had made any such
contract with the claimant that he would be entitled
to the same wages for much less requirement and
having also in mind that he was a man, under the
testimony here, of 49 or 50 years of age at the time
of the alleged contract and has since been subject to
the same laws of nature as all of us. I will so charge
you that if you find such contract was entered into
and as a result thereof you find that the claimant is
entitled to a certain sum for a certain length of time
during which the same conditions existed and the
same amount of service of the same nature was re-
quired of claimant, you will then determine whether
or not there was an implied contract from that time
on. In other words, after those conditions ceased
whether from that time on there was an implied con-
tract, having the definition as I have heretofore given
you in mind of an implied contract, by reason of
which implied contract,—meaning whether there
were services performed there by him, to repeat,
which services were accepted by Miss Van Buskirk
and which services were not paid for by her, which
you must also find if you find for claimant, that by
reason of these services, whatever they were, having
been performed during that time that the claimant is
entitled to reasonable compensation therefor. I will
repeat, that if you find such contract by reason of

which claimant is entitled to the fair value of services so performed for the deceased from the time of the termination of the express contract down to the time of her death. If you find such implied contract you will then proceed to determine the amount to which claimant is entitled, if any, having in mind, as I have already called to your attention, the changed conditions on the farm in question, the nature and amount of work required and the impairment, if any, in the ability of claimant to perform the same.

"If, after careful consideration, you find an express contract in favor of claimant and determine for what length of time under these instructions that express contract continued and arrive at a figure which you believe claimant is entitled to under the terms of the express contract and you do not find any implied contract, that will end your deliberations and you will return a verdict for the amount he is entitled to receive under the terms of that express contract. If, after careful consideration, you resolve both of these propositions, that is, namely that there was an express contract which terminated by reason of these matters, facts and circumstances that I have gone over here with you and you then find there was an implied contract from that time on for the payment of any certain amount constituting the reasonable value of the services that claimant did perform there, whatever they were, down until the death of Frances Van Buskirk, so that what I mean by both propositions, if you find in favor of claimant with reference to the express contract and find an implied contract from that time on, in other words, if you resolve both propositions in favor of claimant, you will then return a verdict of such amount as you find in favor of claimant under both of these situations."

This instruction, relative to an implied contract, was wholly without supporting evidence and directly contrary to any issue in the case.

Some years ago, the time being indefinite, the plaintiff purchased a team and farming tools and used the same in working certain fields, leaving other fields to be rented out to share-croppers. This was undoubtedly in pursuance of some new arrangement and, necessarily, interrupted continuance of the contract, made in 1905, for personal services only.

Defendant's quoted request should have been given for it presented the only issue claimed by the plaintiff.

Under the instructions given and the verdict rendered it is impossible to say upon what theory the plaintiff recovered. He could not recover upon an implied contract and *quantum meruit,* for that would be contrary to his claim and wholly unsupported by evidence.

The jury disallowed $2,105 of his claim. Why the deduction, if the contract was a continuing one? If the jury found that there was a change, when did the change take place? If there was a change, on what theory was compensation awarded?

I find no evidence of value of services, except under the original contract.

The statute, 3 Comp. Laws 1929, § 15682, provides that: "no claim barred by the statute of limitations shall be allowed by the commissioners in favor of or against the estate, as a set-off or otherwise."

This being an appeal to the circuit court from disallowance of the claim by the commissioners it was incumbent on plaintiff to show that his claim was not barred by the statute of limitations. He attempted to do this under an issue that the contract was a continuing one and that issue, as the sole one, should have been submitted to the jury along with defendant's claim that, under the evidence, there was a change, sufficient in point of fact and law to remove

the presumption of continuance relied upon by plaintiff.

We cannot say from this record what the jury found on this point beyond the fact that the jury disallowed a large part of plaintiff's claim.

There should be a new trial and it should be so ordered, with costs to defendant.

FEAD, C. J., and NORTH and BUTZEL, JJ., concurred with WIEST, J.